We'll call the next case, Frank Suarez v. the City of Bayonne, Mr. Cressy. Yes. Good morning, Your Honor. My name is Peter J. Cressy. I would like 10 minutes and then 5 minutes on rebuttal. Please, the Court, we're here... That request will be granted. Thank you, Your Honor. Your Honor, we're here on a civil rights case, as you know. A young man on April 29, 2010 gets picked up, tackled on East 11th Street, handcuffed. He's pummeled. All seen before witnesses that, by the way, were not his mother nor his brother, but citizens of the City of Bayonne. At that point, he is not taken for medical care. He's taken to the Bayonne Police Department. And in doing so, he's placed in a holding tank. For some reason, the police carrying Rhodes decides to take him out of that holding tank and bring him into a back room, the narcotics room. Where during that time, he is... Excuse me a sec. Are we dealing with two claims of excessive force? We are, Your Honor. One during the arrest on the street, and the other in the tank when he was handcuffed. We are, Your Honor. Okay. And that was the point of me going through the chronology, because I believe the Court below missed that distinction. That not only was he injured and pummeled on East 11th Street, but then for some reason, he was taken out of the holding tank, brought into the back of a narcotics room, where he was punched and his face broken and bloodied and abrased, to the point where his clothes were so bloodied, he did go to county jail, and they would not take his clothes. And the District Court seemed to think that there were inconsistencies in his testimony in both instances. Well, that may be true. However, they were backed up by Mr. Klumpf, who was right on the scene, as well as an officer, Konopka, who had testified also that when he brought Suarez into the station, he wasn't bloodied and he wasn't... His clothes weren't... And he didn't require hospitalization at that point. Doesn't this case maybe begin and end with the proposition that there are any number of disputes of material fact in which the District Court made what I would consider to be credibility assessments? I believe so. And the case in Mariano is clear, is that it's not their job to make credibility assessments. It's the duty of the fact finder, the jury, to be able to see... rather dramatically differing accounts of what happened at 11th Street as well as when Mr. Suarez was taking him into custody. And that's correct, Your Honor. And it's not just Suarez. It's John Klumpf and others. Correct. And we also look at the documentation. Carrie and Rose are at the same place on East 11th Street and in the narcotics room, yet their use of force forms, as they completed them, have them at different places at the same time. Rose testified... I didn't even sign the complaint against Suarez. There's no question he had a non-displaced nose fracture when he arrived at the hospital. Correct. Now, the argument is that was as a result of the need to subdue him after he kicked Officer Rhodes and the general, as I recall. But that becomes a question of a fact. How much force was necessary to subdue someone that was already in custody? They claim he wasn't handcuffed. Why? They're in a room with a bench with extra handcuffs. Would you give us your argument as to why Heck v. Humphrey doesn't operate to bar these claims in as much as Mr. Suarez pleaded guilty to simple assault? Yes. As we looked at Garrison v. Porch and recently in the Sheriff v. Picone case, Heck is not a complete bar. And when Mr. Suarez pled guilty to simple assault, he also did it under a civil reservation. We liken it to the NOLA contender. He said, I will plead guilty. I did kick him. But he's always maintained he kicked him to try to keep Rhodes away from him from punching him. Now, that may go to whether he kicked Rhodes. It certainly doesn't touch upon Carrie punching him about the body while in the narcotics room. It certainly doesn't touch upon anything that happened on East 11th Street where he was pummeled. So I think the consistency here is with Garrison v. Porch and not so much with Heck, because it is not an absolute bar. A jury could sit there and decide, wait a minute, yes, he kicked him. But was it – it shocked the conscience that they would take this boy and pummel him, break his nose, because they took him out for unknown reasons. They took him out of a holding cell into that narcotics room. That's why Heck doesn't apply, because a jury needs to see, is this objectionably reasonable use of force, and it was not. But don't you really have different Heck arguments between the two confrontations, one on East 11th Street and one at the police station? Yes. I think Heck does not apply at all to the East 11th Street, because he didn't plead any. Okay. But the police station, he pled to simple assault. Right. And even though there's a civil reservation of rights, didn't his plea to simple assault concede that his use of force against Rhodes at that time wasn't justified? And if, in fact, he were allowed to go forward with a civil action involving the incident at the police station, it would call into question the validity of the guilty plea. No, I don't believe so, Your Honor, because he agreed to simple assault of Officer Rhodes. All right. In protecting himself. Do you agree with me in doing that that he was asserting that the use of force against Rhodes at that time was not justified? I would agree at that time. Right. Okay. All right. Then subsequent, does that give the officers the right to, and is it objectionably reasonable, to pummel the young man while he's still in custody, while he's handcuffed? Remember, the plea said nothing to Officer Carey, absolutely nothing. Yet he testified, Carey hit me, pummeled me, punched me about the body. Rhodes was the one that punched him in the face, broke his nose. So I think they're separate and distinct incidents. So you're saying there's almost three incidents we have to analyze here? Yes, because I believe the – now, you may know, too, that people plead to simple assault for various reasons. One, he's a young man without money. He's got a whole separate criminal attorney he's got to pay. So there may be other reasons, kind of like in the sheriff case where the NOLA contendere, where this court analyzed that, look, there's many reasons why people take a plea or plea NOLA contendere. So – I'm sorry, I didn't – only if you're finished with it. I am, Your Honor. Okay. Let's assume that you've got good arguments on summary judgment here that shouldn't have been granted on the excessive force. What about the claims against the city? Why wasn't summary judgment appropriate on these municipal liability claims? Well, as you know, Your Honor, we have to show that there is a policy or custom that the city had in place. And I believe the court below just ignored the evidence and the documentation that this is an ongoing thing. The city of Baywood is a three-mile-long city. Yes, it has about 65,000 people, but the amount of excessive force cases, not only against the police force, but also against carry and roads, carry with the Fratelli's Bar and roads with the bar called The Rock, these are lawsuits that when they testified, they said, no, nothing's happened to us. We went over the training with lower court and said, the Attorney General requires – of New Jersey requires two times a year that these officers must be trained in use of force. Neither one of them testified that they could recall when they took the training. There were no documentations, no sign-in sheets. The Internal Affairs, Sergeant Valdora, never even checked whether they were properly trained. He just stamped exonerated. And we went into the Internal Affairs as part of our policy and custom argument that this department is not interested in abiding by the rules. They're cowboys, and people are getting hurt because of it. And I will add that since this case, more cases have been filed. So I think we were clear with the court below and in our appellate brief that there is a series of cases, and they're not old cases, and they involve these officers. And there's a policy of upper management ignoring training requirements, ignoring these cases, and not taking action against these officers once they're found to have violated the rules. Thank you. Okay. We'll have you back on rebuttal. Mr. Doran. Good morning, Your Honors. May it please the Court, Michael Doran from the law firm of Camerata, Nolte & Garrigan, on behalf of appellate defendants, City of Bayonne, Detective Rhodes, and Detective Carey. I'd like to first address the questions asked by Judge Sirican and Judge Mariani with regard to inconsistencies on the summary judgment record below. And I think to call them inconsistencies is somewhat of an understatement. They are different versions of the events which are not only contradictory but wholly incompatible with one another. And they're versions of the events which are incompatible with one another, all of which versions came from the plaintiff in this particular case. In September of 2010, when the plaintiff first filed this complaint in the district court against these defendants, the claim the plaintiff had made was that what occurred in Bayonne Police Headquarters subsequent to his arrest was an unprovoked use of force against him by Detective Rhodes and Detective Carey. And for three and a half years, that was the position that plaintiff had taken. It wasn't until, and in fact he was specifically asked the question during his deposition, did you try to fight back at all while you were in police headquarters? He said, not at all. I was handcuffed. Specifically denied under oath during his deposition in this case. That is the case the defendants were required to defend, and that is the case that went before the district court on summary judgment. During the pendency of the summary judgment motion, the first summary judgment motion, there were two summary judgment motions ultimately filed in the district court. During the pendency of the first summary judgment motion on December 18, 2012, the plaintiff walks into a municipal courtroom and says under oath for the first time, well after discovery had ended, that what he testified to and the position that he took with regard to what happened at Bayonne Police Headquarters was simply untrue. And that in fact he assaulted Detective Rhodes during the course of that interaction. On that record, on that record alone, there's no doubt that plaintiff's position in the federal case undermines the validity of the guilty plea of simple assault. They are simply incompatible positions. And we can speculate, as plaintiffs and plaintiffs' counsels does before this court, as to what plaintiffs may say if he gets to trial. Is that so, though, as to the conduct that he alleges to the first incident on East 11th Street? No, it does not. And concededly, his guilty plea to simple assault in Bayonne Police Headquarters has no impact on his plan for what happened on East 11th Street. And that is a separate analysis. But with regard to what happened at Bayonne Police Headquarters, what Heck does is Excuse me, but even assuming that's true before you get to Heck, why isn't it still a jury question? I'm sorry, Your Honor? Why isn't it still a jury question, his inconsistencies? Ultimately, it could be a jury question, Your Honor, but the Heck analysis focuses on what plaintiff says. It focuses on what plaintiff's claim is before the federal court and what his testimony is in pleading guilty to a criminal charge. In this case, the record that the district court has before it was solely that plaintiff was that the defendants used force against the plaintiff unprovoked and that at no time did he strike these officers, at no time did he kick these officers, and at no time did he fight back. That is the record on summary judgment, and that is the evidence that's in this case. There is no evidence of self-defense. There is no, and I know Plaintiff's Counsel had referenced plaintiff taking a position. But it seems like the district court just flat-out disbelieved Suarez. And I'm of the view that that would be inappropriate with respect to the court's mission on summary judgment. You're not to find facts. You're not to make credibility assessments, and it seems as though that's exactly what he did. I think what the district court did below is not necessarily, to some extent, yes, they disbelieved Mr. Suarez. And I think any time an individual under oath in one place tells one story and under oath in another venue tells a different story, which amounts to perjury, that individual should be disbelieved. You're saying that at the time the district court decided the summary judgment, it didn't have the plea to simple assault before it. It did have the plea to simple assault before it. What it did not have before it is any explanation from the plaintiff in violation of Rules 46 and 37. Okay, his deposition was given before the plea. Yes, Your Honor. And, in fact, discovery was closed by the time the plea was given before the municipal court. It seems as though the testimony of John Klump, who observed the officers beating him on 11th Street, was also ignored or disregarded as being not worthy of belief, not worthy of credence. The testimony of John Klump is wholly inconsistent also with the testimony of the plaintiff. And I think that's one of the problems that we have in this particular case. Because plaintiff decided that from the outset he was going to provide different versions of what occurred, both on East 11th Street and at Bayonne headquarters, determining precisely what it is that happened and applying those facts became somewhat of an impossible task. He contradicts himself. In fact, when he initially filed an internal affairs complaint with the city of Bayonne, his claim with regard to what occurred on East 11th Street was simply that he was tackled and thrown into a police car. He testifies that he was not handcuffed at the time that he claims thereafter that he was assaulted on East 11th Street. But those kinds of inconsistencies, are they nonetheless the kind of issues that are best resolved and in fact must be resolved by a jury rather than on summary judgment? I'm sorry, Your Honor. Not when those inconsistencies are based on the appellant's own different versions of the events. Yes, if there are different versions of the events between the plaintiffs and the defendants in the case which require a fact finder to make a determination as to what occurred, absolutely. Summary judgment is not appropriate. In this particular case, depending on which version of events the court accepts that was presented by a plaintiff, there may be issues of fact, there may not be issues of fact. You might change the word accepts to believes. Your Honor, we're now presented with a claim of self-defense, which under New Jersey law is a legal impossibility. You cannot commit assault in self-defense. It's simply impossible. I have one last question, if I may. How does this case differ from this circuit's decision in Nelson v. Cheshire, which I believe has been cited in both briefs at 109 F. 3rd, 142? I read the case and thought that it provided substantial authority for the proposition in this case ought to go to trial, not only on the issues of fact that are in dispute, but also with respect to the application of Heck v. Humphrey. Well, Nelson does not stand for the proposition that an individual who pleads guilty for assault has unfettered access to the courts. No question. No question. It simply says that in certain factual circumstances, a plea does not necessarily undermine the validity of an excessive force claim or vice versa. In Nelson, the plaintiff from the outset of the case and in his pleadings conceded that he committed criminal offenses. He conceded that he disobeyed the officer's orders. He conceded that he ran away. He conceded that he engaged in a struggle with the officer and that the officer thereafter utilized excessive force. The question was whether in subduing Nelson, excessive force was used. Wasn't that the issue? Well, my understanding of the facts in that case were that after he was subdued, it wasn't during the course of subduing him, but after he was subdued, the claim was that excessive force was used thereafter. And in Nelson, which I believe arose out of Pennsylvania, it was the Western District of Pennsylvania, the determination was based on the resisting arrest statute in Pennsylvania. In New Jersey, the statutory framework for the simple assault and self-defense statute essentially provides that if you commit assault, it cannot be in self-defense, and you are conceding that the force that was used by the officers during that particular period in time was justifiable. Assume for a moment that once Detective Rose was kicked in the genitals, he did what I believe Suarez argues, which is to punch Suarez not once, not twice, but three times in the nose. Doesn't that create an issue of fact as to whether or not excessive use was applied here? Now, again, it's an issue of fact, but assuming that for purposes of the non-moving party, as we must, giving every benefit of the doubt to the non-moving party, doesn't that create an issue of fact under the application of HEC? I think if those were the facts that were presented to the district court, yes, that would create an issue of fact. The problem with that theory is that the plaintiff never presented those facts to the district court. The plaintiff simply said, I never assaulted anybody, I never struck anybody, they engaged in an unprovoked use of force against me. It is only now, after the district court proceedings were closed and summary judgment was pending, that those facts have been presented. And that creates an incredible problem for the defendants in this case, who for two and a half years litigated this case through discovery based on a specific factual claim. It violates Rule 26. It violates Rule 37. Its sanctions are permissible under this particular fact of case. At no point were Rule 26 disclosures, discovery disclosures amended or supplemented. And in fact, even after the plea was entered, there was no affidavit or certification submitted in opposition to the summary judgment motions explaining in any way why it is this inconsistent testimony exists or trying to provide any explanation for why the testimony is inconsistent. Clearly, the plaintiff was aware of what the truth was in this particular instance of what happened at Baylon Police Headquarters and simply chose not to tell the truth during the course of this deposition. It's bad faith and it's clearly willful misconduct. Subsequent to that, when he enters the plea of guilty, not only does he refuse to provide or fail to provide that information to the defendants, he tries to hide behind the veil of a civil reservation. And the New Jersey Appellate Division has specifically spoken on the issue. And a point to the case of Stone vs. Police Department of the Borough of Keyport. And the Appellate Division in New Jersey, under the same rules, specifically said, and I quote, the immunity is not available to prevent impeachment, which may uncover the perjurious basis of a criminal defendant's civil claim. That is precisely what we have here. Plaintiff provides testimony in one venue saying I did nothing wrong and then pleads guilty in another venue. But the defendants cannot be prohibited from using that information, not only for purposes of hack analysis, but also for purposes of impeachment, should this matter get remanded for trial. I'd like to hear your views on the municipal liability summary judgment. Absolutely. There are essentially two claims that are presented, or two sources of evidence that are presented by the plaintiff with regard to municipal liability. One is the manner in which the plaintiff's internal affairs complaint itself was investigated and the claim that it was investigated improperly. And we know that this incident occurred on April 29th of 2010 and that the internal affairs complaint was filed on July 10th of 2010, so two months, nearly two months later. Any evidence of what occurred two months after this event cannot be viewed as competent evidence of a policy existing at the time, two and a half months prior that plaintiff was arrested. The other source of evidence are alleged other civil complaints that have been filed against the city of Bayonne, which, one, have not been included as part of the record or not attached as exhibits to the summary judgment motion, nor as part of the appendix before this court, and are no more evidential than allegations made in plaintiff's complaint. Is there anything in the record that would suggest that Mr. Cressy was correct in characterizing these two individuals as cowboys? No, Your Honor, there's not. There's a newspaper article. It's the only thing in the record which addresses it in any way. There's a newspaper article which discusses a settlement in a civil suit in which Detective Carey was named as a defendant. And, in fact, there were two cases that arose out of the same incident, one of which was settled by the city of Bayonne, the other of which went to trial and state with certainty to the court that Detective Carey was found not guilty by a jury at the time of trial. I participated in that trial myself. So other than a newspaper article, which may or may not have any evidential basis, certainly it's our position that it does not. And, by the way, the newspaper article solely refers to the facts of those cases based upon the allegations which are contained in the complaint that was filed in the underlying matter. So, no, it's certainly our position that there is no evidence in the underlying summary judgment record or in the appendix before this court which would indicate liability on the city of Bayonne. What about the district court's grant of qualified immunity? Well, I think that becomes a difficult question, again, because of the inconsistent stories that are provided by the plaintiff. And I think qualified immunity, to a large extent, exists solely for cases like this, where a plaintiff provides differing versions of an event. The determination needs to be made based upon the officer's observations at the time it comes onto a particular scene. So we look at it from the perspective of the police officers and whether or not they would understand that their actions in a particular circumstances were objectively unreasonable. In this particular case, there is evidence which suggests not only that the plaintiff ran from the police on East 11th Street, that these officers did nothing more than tackle him and place him in a police car. And that's the plaintiff's version of the events when he filed an internal affairs complaint and when he provided certified answers to interrogatories. In fact, pointed to no actions by the police officers on East 11th Street, other than that he was tackled and placed in the back of a police car. It wasn't until his deposition that he decided to change the story. And we have the same issue again with, and I won't rehash the facts, with regard to what happened at Bayonne Police Headquarters, but it's the same issue. If a plaintiff can simply avoid summary judgment and avoid a grant of qualified immunity by changing his story, every case would go to trial. There would never be a grant of summary judgment. And that's, in fact, what happened in this particular case. All right, Mr. Dorn. Thank you. Thank you very much. We'll have Mr. Cressy back on rebuttal. Thank you, Your Honors. Just a few things on rebuttal. Mr. Dorn attempted to make the argument about the plea of simple assault. You would note in the record that Mr. Schwartz didn't change his story. He was never charged with assault in the municipal court. There was a series of drug charges that were dropped. He was never charged with simple assault. That was a lesser offense that he pled guilty to, again, for reasons that are up to Mr. Suarez. He didn't change his testimony. The testimony is set forth at A540. It's two lines. Were you in the city of Bayonne on that day? Yes. And were you arrested by an officer, Detective Rhodes? Yes. And during that arrest, did you strike him and cause him pain? Yes. Okay? It doesn't necessarily say or change what he testified to in his deposition. It certainly temporarily has nothing to do with East 11th Street and certainly temporarily has nothing to do with Rhodes punching him in the face three times and breaking his nose. Now, with regard to Officer Rhodes and Officer Carey Cowboys, these are gentlemen that don't understand what it's like to be a police officer. They've been on for many years. However, they testified they had no probable cause, no search warrant, no arrest warrant. They didn't observe any illegal activity. Rhodes had no knowledge what a Terry stop even is. Carey had no knowledge that a CI or a confidential informant had to be registered either with the department or the prosecutor's office. These are men that are not trained. They came upon Mr. Suarez not in uniform, not in a marked car, but in plain clothes, running at him. Of course he ran, okay? He's been consistent. Mr. Suarez has been consistent throughout to cite an internal affairs form that, by all accounts, wasn't even investigated. Mr. Suarez wasn't even interviewed. And to use that to try to say Mr. Suarez isn't telling the truth is ludicrous. And with that, Your Honor, Your Honors, I believe that heck does not apply here. This case is much closer to garrison and porch in the aforementioned cases that we cited, both in argument and our briefs. I thank you for your time. Okay, thanks.